UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRIAD HEALTH LLC d/b/a MEDIRA RX,

Petitioner/Cross-Respondent,

-v-

NOVUS HEALTH, INC. f/k/a CENTRALWEST HEALTHCARE, INC.,

Respondent/Cross-Petitioner.

26-CV-1957 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Before the Court are a petition and motion to vacate an arbitration award filed by Petitioner Triad Health LLC d/b/a MediraRx ("MediraRx") (ECF Nos. 6, 10) and a cross-petition to confirm the arbitration award filed by Respondent Novus Health, Inc., f/k/a CentralWest Healthcare, Inc. ("Novus") (ECF No. 17 at 24-31). For the reasons that follow, MediraRx's motion and petition to vacate the arbitration award are denied, and Novus's cross-petition to confirm the arbitration award is granted.

## I. Background

The following facts are taken from MediraRx's petition and Novus's cross-petition. (*See* ECF No. 10 ("MediraRx Pet."); ECF No. 17 ("Novus Cross-Pet.").) The facts are undisputed except where otherwise noted.

### A. Factual Background

Novus is a non-profit healthcare provider that provides discounted outpatient prescription drugs to low-income patients through its participation in the federal 340B Drug Pricing Program (the "340B Program"). (Novus Cross-Pet. ¶ 8.) MediraRx is a limited liability company that

acted as the exclusive third-party administrator ("TPA") for Novus's participation in the 340B program. (MediraRx Pet. ¶ 1.) On January 15, 2020, Novus and MediraRx entered into an Amended and Restated 340B Program Third Party Administrator Service Agreement (the "TPA Agreement") to set the terms of MediraRx's role as Novus's exclusive TPA. (*Id.* ¶ 7.) The TPA Agreement contained a Delaware choice-of-law provision and an arbitration clause, which required disputes to be resolved through arbitration with the American Arbitration Association ("AAA") in New York City.[1] (*Id.*) While the initial term of the TPA Agreement was set to expire on January 14, 2025, the TPA Agreement contemplated automatic renewal for successive five-year periods unless either party delivered a certified or registered letter of non-renewal at least ninety days before the end of the pending term. (*Id.* ¶ 8.)

The TPA Agreement further contemplated that Novus would contract with pharmacies to dispense drugs to eligible patients. (*Id.* ¶ 9.) Novus entered into two such contracts: one with Gateway Apothecary, Inc. (the "Gateway Contract") and another with Horizon Health Pharmacy, LLC (the "Horizon Contract") (together, the "Pharmacy Contracts"). (*Id.* ¶¶ 9-10, 12.)

MediraRx is a signatory to the Gateway Contract, which contains its own AAA arbitration clause specifying that Missouri law governs disputes arising out of the contract. (*Id.* ¶ 11.) The Gateway Contract's initial term ran through September 30, 2025. (*Id.* ¶ 16.) Conversely, MediraRx is not a signatory to the Horizon Contract, but MediraRx is a third-party beneficiary of at least certain provisions of the Horizon Contract. (*Id.* ¶ 14.) The Horizon Contract contains a forum-selection clause providing for exclusive venue in Missouri state or

[1] Novus purports to deny this allegation in MediraRx's Petition and other allegations describing the contents of the pertinent agreements in this matter on the ground that the agreements speak for themselves. (*See* ECF No. 17 at 3.) The Court finds that MediraRx's descriptions of the relevant provisions accurately reflect their contents. (*See, e.g.*, ECF No. 31-1 §§ 2(A), 6(A), 7(B)-(C); ECF No. 31-2 §§ 1-2, 5, 7, 20, 22(a)-(c); ECF No. 31-3 §§ 1-2, 8(b), 20, 22, 25(c)(ii).)

federal courts. (*Id.* ¶ 13.) The Horizon Contract's initial term expires on August 21, 2028. (*Id.* ¶ 16.)

Novus alleges that, on or about June 4, 2024, Novus sent a letter to MediraRx via certified mail, entitled "Notice of Termination." (Novus Cross-Pet. ¶¶ 16-17.) Novus alleges that this letter sufficed to terminate the TPA Agreement at the conclusion of its initial term on January 14, 2025. (*Id.* ¶ 21.) Novus claims that MediraRx acknowledged receipt of this letter in a call on January 10, 2025 and later referred to the TPA Agreement as the "terminated contract." (*Id.* ¶¶ 22-23.)

**B. Procedural History**

On June 5, 2025, Novus commenced AAA arbitration in New York, seeking a declaratory judgment that Novus terminated the TPA Agreement effective January 14, 2025, as well as damages for breach of contract and conversion. (MediraRx Pet. ¶ 19.) In its arbitration demand, Novus alleged that the AAA "has jurisdiction over this controversy/claim pursuant to the Agreement's Dispute Resolution provision." (ECF No. 10-5 ¶ 11.)

On July 23, 2025, MediraRx filed its Answer and Affirmative Defenses and Counterclaim. (MediraRx Pet. ¶ 20.) In response to Novus's allegation regarding the AAA's jurisdiction, MediraRx "[a]dmitted to the extent that if AAA has jurisdiction over the underlying controversy/claim as between Novus and Medira RX, the AAA must also have concurrent jurisdiction over the pharmacy contracts . . . irrespective of different venue of [sic] choice of law provisions contained in the pharmacy contracts." (ECF No. 10-6 ¶ 11.) MediraRx denied the remainder of Novus's jurisdictional allegation "to the extent that it suggests that the New York City AAA can maintain jurisdiction over this controversy/claim to the exclusion of the pharmacy contracts." (*Id.*)

However, in the section entitled "Affirmative Defenses to Novus's Demand," MediraRx raised only the following defenses: accord and satisfaction, failure to state a claim for conversion, limitation of liability, set off, recoupment, continuous breach by Novus, defective termination, amendment of the term set under the TPA Agreement by the Gateway and Horizon Contracts, and extension of the term set under the TPA Agreement by the Gateway and Horizon Contracts. (*Id.* at 20-25.) Additionally, MediraRx raised counterclaims against Novus for breach of contract, accounting, and declaratory judgment that Novus's alleged termination of the TPA Agreement was ineffective, or, in the alternative, that MediraRx was entitled to be Novus's exclusive administrator under the Gateway and Horizon Contracts. (*Id.* ¶¶ 66-87.)

On August 6, 2025, Novus answered MediraRx's counterclaims and raised affirmative defenses, including one for "Lack of Jurisdiction/Arbitrability." (ECF No. 10-7 at 19.) In support of that affirmative defense, Novus contended that the arbitrator "lacks jurisdiction to adjudicate claims arising in connection with the Horizon Contract and/or the Gateway Contract" because such claims "are not subject to this New York-based arbitration because the Horizon Contract and the Gateway Contract both contain forum-selection clauses." (*Id.*)

On September 25, 2025, Kevin Feerick (the "Arbitrator") held a preliminary conference and issued a preliminary order, directing the parties to brief, among other issues, "the scope of arbitrability of certain issues raised, including remedies sought, jurisdiction of the Arbitrator to consider contracts beyond the . . . TPA Agreement or whether the . . . TPA Agreement can be fully considered without these other pharmacy contracts irrespective of different arbitration clauses." (MediraRx Pet. ¶ 24; ECF No. 10-8 § 4.)

On October 10, 2025, MediraRx retained Wilson Elser as replacement counsel due to a conflict that arose with its prior counsel. (MediraRx Pet. ¶ 25.) On October 13, 2025, the

Arbitrator issued a disclosure informing the parties that in the 1990s, Wilson Elser represented the parent company of a corporation for which the Arbitrator served as Managing Counsel. (*Id.* ¶ 26; *see also* ECF No. 10-16.) The Arbitrator also disclosed that he had hired one attorney from Wilson Elser, Francis Manchisi, who has since returned to Wilson Elser. (*Id.*) The Arbitrator concluded the disclosure by expressing that he did not "see or feel that any of this would affect [his] ability to be fair and efficient in this claim." (*Id.*) The AAA mailed the Arbitrator's disclosure to the parties alongside a letter directing the parties to notify the AAA of any objections to the Arbitrator's appointment by October 20, 2025. (*See* ECF No. 27-7 at 1.) Neither party made any such objection. On October 20, 2025, the Arbitrator issued another order, in which the Arbitrator directed the parties to submit any questions "regarding neutrality of the arbitrator . . . to the AAA." (ECF No. 27-8 at 2.)

On November 12, 2025, MediraRx submitted an "Initial Written Submission on Preliminary Matters," in which MediraRx argued that "because multiple contemporaneous contracts govern the parties' rights and only one provides for arbitration in this forum under Delaware law . . . a court must decide whether and to what extent the parties' subsequent agreements . . . limit the arbitration clause in the TPA Agreement." (ECF No. 10-12 at 5 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024)).) On December 12, 2025, Novus responded, arguing that MediraRx had failed to timely object to the jurisdiction of the Arbitrator, thereby waiving its right to object to arbitration. (ECF No. 10-15 at 4-5.)

On January 8, 2026, the Arbitrator issued a Decision and Order (the "Award"), in which the Arbitrator concluded that Novus properly terminated the TPA Agreement and ordered MediraRx to "identify via an accounting all revenue and reports that Medira has been withholding since January 15, 2025." (ECF No. 10-10 at 3, 5.) In so concluding, the Arbitrator

clarified that the Gateway and Horizon Contracts were "independent" and any rights arising from those agreements "need to be determined according to their own merits." (*Id.* at 3.)

The Arbitrator also addressed MediraRx's argument that he "lacks jurisdiction to determine critical threshold issues." (*Id.*) The Arbitrator held that MediraRx "waived any challenge to this Arbitrator's jurisdiction" because MediraRx failed to object to arbitrability under AAA Commercial Rule 7(c). (*Id.* at 3-4.) The Arbitrator emphasized that "[n]o timely objections were received in this matter," and that MediraRx actively participated in arbitration, including by raising a counterclaim seeking to recover from Novus "all damages that are owed under the . . . TPA Agreement." (*Id.*)

On March 10, 2026, MediraRx commenced this action and filed its motion to vacate the Award (ECF No. 6), accompanied by a memorandum of law (ECF No. 7 ("MediraRx Mem.")). MediraRx also filed its petition to vacate the Award on March 11, 2026. (MediraRx Pet.) Novus filed its response opposing the motion to vacate and cross-petitioning to confirm the Award on May 11, 2026. (Novus Cross-Pet.) MediraRx filed a reply in further support of its motion to vacate and in opposition to Novus's cross-petition on July 6, 2026. (ECF No. 32.)

## II. Legal Standard

"A district court's authority to vacate an award 'is strictly limited in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation.'" S*marter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378 (2d Cir. 2023) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010)); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) ("The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the Federal Arbitration Act." (cleaned up)).

Accordingly, a party seeking to vacate an arbitration award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (quotation marks omitted).

As relevant here, Section 10 of the Federal Arbitration Act ("FAA") permits district courts to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators," or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(2), (4). Even on these explicit grounds for vacatur, "the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" *Kolel Beth*, 729 F.3d at 103-04 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Indeed, vacatur is inappropriate where "a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks omitted).

Finally, "upon the denial of a motion for vacatur, the Court must confirm an arbitration award." *Spliethoff Transp. B.V. v. Phyto-Charter Inc.*, No. 20-CV-3283, 2023 WL 6066247, at *3 (S.D.N.Y. Sep. 18, 2023) (quoting *Beljakovic v. Melohn Properties, Inc.*, No. 04-CV-3694, 2012 WL 5429438, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 542 F. App'x 72 (2d Cir. 2013)), *aff'd*, No. 23-7308-CV, 2024 WL 5165511 (2d Cir. Dec. 19, 2024); *see also* 9 U.S.C. § 9 ("[T]he court must grant [an order seeking confirmation] unless the award is vacated, modified, or corrected.").

## III. Discussion

MediraRx seeks to vacate the Award on three grounds: (1) that the Arbitrator acted with evident partiality by refusing MediraRx's requests for further details on his prior relationship

with MediraRx's counsel, Wilson Elser; (2) that the Arbitrator exceeded his powers by ordering relief under the Pharmacy Contracts, which were outside of his jurisdiction; and (3) that the Arbitrator exceeded his powers by deciding the proper jurisdiction for the parties' dispute, in violation of *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). (*See generally* MediraRx Mem.) As discussed below, none of these arguments warrants vacatur.[2]

**A. Evident Partiality of the Arbitrator**

MediraRx first argues that the Award should be vacated because *after* the Arbitrator promptly disclosed his prior relationship with the law firm representing MediraRx, the Arbitrator refused MediraRx's repeated requests to hold a conference to provide more color as to the scope and nature of that prior relationship. (*Id.* at 25-29.) This argument fails, as it suffers from prominent legal and factual defects.

An arbitration award may be vacated on partiality grounds only "when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007)). Partiality requires more than "the mere appearance of bias" and cannot be satisfied with "speculation without substance." *Morelite Const. Corp. (Div. of Morelite Elec. Serv., Inc.) v. N.Y.C. Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83 (2d Cir. 1984). "Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties." *Scandinavian*, 668 F.3d at 72; *see also*

[2] This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). MediraRx is a citizen of New York, Novus is a citizen of Missouri, and the amount in controversy exceeds $75,000, exclusive of interest and costs. (MediraRx Pet. ¶ 3; Novus Pet. ¶ 3.)

*Applied Indus*., 492 F.3d at 137 ("An arbitrator who knows of a material relationship with a party and fails to disclose it meets [the] 'evident partiality' standard[.]").

Here, MediraRx's proffered showing that the Arbitrator acted with impermissible bias falls far short of this standard. The Arbitrator immediately and voluntarily disclosed his relationship with Wilson Elser—in fact, he disclosed details pertaining to the prior relationship twice. (ECF No. 10-16; ECF No. 10-17.) This affirmative disclosure distinguishes this case from MediraRx's cited cases finding partiality. *See, e.g.*, *Applied Indus*., 492 F.3d at 137 ("A reasonable person would have to conclude that an arbitrator who failed to disclose [a material relationship with a party] was partial to one side."); *Beebe Med. Ctr., Inc. v. Insight Health Servs. Corp.*, 751 A.2d 426, 435 (Del. Ch. 1999) ("[A]n arbitrator's nondisclosure of a relationship substantial enough to create a reasonable impression of bias will ordinarily dictate vacatur."). Further, the Arbitrator was not obliged to hold conferences to appease MediraRx's doubts. Indeed, the AAA specifically instructed the parties to "notify the . . . AAA . . . of any objections to the arbitrators' appointment by October 20, 2025" and clarified that "[t]he [A]rbitrator shall not be copied on any comments related to disclosures." (ECF No. 27-7 at 1.) MediraRx cannot blame the Arbitrator for its own failure to adhere to the AAA's clear directive.

Moreover, the Arbitrator's *de minimis* relationship with Wilson Elser—hiring one attorney from the firm in the 1990s—"is simply too insubstantial to require vacatur." *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004). The Arbitrator's single point of contact with the firm occurred well over twenty years ago. That temporal distance renders the Arbitrator's relationship with Wilson Elser immaterial and an insufficient basis for vacatur. *See Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 507 (2d Cir. 2018) ("[P]ast contacts do not amount to material bias.").

Finally, MediraRx's attempt to vacate by way of evident partiality independently fails for its reliance on speculation. MediraRx hypothesizes that the Arbitrator "*may* have formed views about the competence, reliability, or trustworthiness of [Wilson Elser] that *could* color his assessment of the arguments presented." (MediraRx Mem. at 27 (emphases added).) MediraRx's conjecture continues: "*If* the prior retention involved a matter in which Wilson Elser's performance was viewed as unsatisfactory, the [A]rbitrator *could* harbor negative impressions of the firm that would disadvantage MediraRx." (*Id.* at 22-23 (emphases added).) Courts in this district have long recognized that arbitration awards will be set aside "only if the bias of the arbitrator is direct and definite." *Sofia Shipping Co. v. Amoco Transp. Co.*, 628 F. Supp. 116, 119 (S.D.N.Y. 1986). The hypothetical nature of the alleged bias thus provides yet another reason against granting vacatur on partiality grounds. *See Morelite*, 748 F.2d at 83 (no vacatur for bias based on "speculation without substance").

**B. Relief Under the Pharmacy Contracts**

MediraRx's remaining grounds for vacatur sound in FAA § 10(a)(4). "A party seeking relief under that provision bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (cleaned up). Thus, the proper inquiry under § 10(a)(4) is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)).

MediraRx first challenges the Award for "ordering relief that extends into the post-termination period, a period governed exclusively by the [Pharmacy Contracts] that [the Arbitrator] . . . acknowledged were beyond his jurisdiction." (MediraRx Mem. at 22.) MediraRx argues that the Award's requirement that MediraRx "identify via an accounting all revenue and reports that Medira has been withholding since" the termination of the TPA Agreement and "pay to Novus all funds and provide all reports identified as properly belonging to Novus" is inconsistent with the Award's recognition that the Pharmacy Contracts "are independent contracts which need to be determined according to their own merits." (*Id.*) In essence, MediraRx argues that the withheld payments cannot be compartmentalized into payments due under the TPA Agreement and payments due under the Pharmacy Contracts, so the Award—and, seemingly, *any* award—impermissibly reaches beyond the TPA Agreement. (*Id.*) Second, and in some tension with the preceding argument, MediraRx argues that the Award is not "mutual, final, and definite" because it does not resolve the interplay between the TPA Agreement and the Pharmacy Contracts. (*Id.* at 18.)

Both of MediraRx's arguments are unavailing. MediraRx's first argument fails because the Award expressly limits itself to the TPA Agreement. The Arbitrator found that the Pharmacy Contracts were "independent contract[s] which need to be determined according to their own merits," before further emphasizing that "the Gateway and Horizon contracts are separate and distinct" from the TPA Agreement. (ECF No. 10-10 at 3, 5.) Accordingly, where the Award orders MediraRx "to pay to Novus all funds and provide all reports *identified as properly belonging to Novus*," the Award does so solely as to the funds and reports duly owed to Novus under the TPA Agreement, not the Pharmacy Contracts. (*Id.* at 5 (emphasis added).)

To the extent that MediraRx contends that the Arbitrator could not have disentangled the funds and reports owed under the TPA Agreement from those due under the Pharmacy Contracts, the Arbitrator rejected that argument by finding that the Pharmacy Contracts were "separate and distinct" and "independent contract[s] which need to be determined according to their own merits." (*Id.* at 3, 5.) It is not the Court's place "to decide whether the [A]rbitrator 'got it right' when the question" of the relationship of rights under the TPA Agreement and the Pharmacy Contracts "has been properly submitted to the arbitrator and neither the law nor the agreement categorically bar [him] from deciding that issue."[3] *Jock*, 646 F.3d at 124.

Further, "inconsistency with another award is not enough by itself to justify vacating an award" because "[p]rinciples of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings." *Conn. Light & Power Co. v. Loc. 420, Int'l Bhd. of Elec. Workers, AFL-CIO*, 718 F.2d 14, 20 (2d Cir. 1983). Thus, even if MediraRx is correct that future litigation over the Pharmacy Contracts would deal with "the same revenues and reports the Arbitrator has ordered MediraRx to surrender," a subsequent panel or court adjudicating either of the Pharmacy Contracts would not necessarily be bound by the Arbitrator's determination that Novus properly terminated the TPA Agreement. (MediraRx Mem. at 24.) Put differently, MediraRx may well be right that Novus's termination of the TPA Agreement does not *ultimately* entitle Novus to the funds and reports that are the subject of the Award because of MediraRx's rights under the Pharmacy Contracts. But that is an issue for

[3] MediraRx certainly raised to the Arbitrator the argument that the execution of the Pharmacy Contracts made it impossible for Novus to completely sever its contractual relationship with MediraRx. (*See, e.g.*, ECF No. 10-6 at 24 (arguing termination of the TPA Agreement was "premature for not accounting for these other ongoing contractual relationship(s) . . . where [MediraRx] agreed to continue serving as the exclusive 340B third party administrator beyond January 14, 2025").)

another day, after MediraRx litigates its rights under the Pharmacy Contracts. In MediraRx's words, "MediraRx's claims under those agreements remain entirely unresolved." (*Id.*)

The requirement that arbitration awards be "mutual, final, and definite" does not mandate a different result. 9 U.S.C. § 10(a)(4). MediraRx says otherwise, arguing that the Award would require MediraRx "to litigate or arbitrate its rights under [the Pharmacy Contracts] . . . , including the critical question of whether MediraRx is entitled to the revenues, fees, and reports arising from post-termination prescriptions and services." (MediraRx Mem. at 24.) But the FAA makes clear that an award must be "mutual, final, and definite . . . *upon the subject matter submitted*" to arbitration, not the panoply of issues that may arise in later litigation. 9 U.S.C. § 10(a)(4) (emphasis added); *see also Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp. 2d 34, 40 (E.D.N.Y. 2004) ("The award need not resolve all issues that might arise in subsequent litigation—it need only finally resolve the issues submitted to arbitration." (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998) (per curiam))). Here, the Pharmacy Contracts contain divergent provisions pertaining to arbitration and venue, and the Arbitrator reasonably concluded that the Pharmacy Contracts were "independent," such that their merits could properly be adjudicated on "their own merits[]" in "different forums." (MediraRx Mem. at 24.) Accordingly, the fact that the Award did not resolve the parties' rights under the Pharmacy Contracts was, if anything, proper—and certainly not a basis for vacatur.

### C. Waiver of Jurisdictional Defect

MediraRx's final argument likewise seeks vacatur under FAA § 10(a)(4). This time, MediraRx argues that the Arbitrator exceeded his power when he "simply assumed jurisdiction over the whole matter and purported to resolve it on the merits, ignoring a controlling Supreme Court decision that was brought directly to his attention." (MediraRx Mem. at 18.) In so

arguing, MediraRx contends that the Arbitrator should have applied the Supreme Court's holding in *Coinbase, Inc. v. Suski*, which established that a court, not an arbitrator, "should decide whether a subsequent contract supersedes an earlier arbitration agreement." 602 U.S. at 147.

The Court disagrees with MediraRx's framing of the issue. While the Award did not expressly cite *Coinbase*, it acknowledged MediraRx's argument under *Coinbase* that "only a court can decide to what extent the parties' subsequent agreements . . . supersede or limit the arbitration clause in the [TPA] Agreement." (ECF No. 10-10 at 3.) But the Arbitrator held that MediraRx "waived its right to contest this arbitral tribunal's jurisdiction" because MediraRx failed to raise any jurisdictional objection in its answer to Novus's arbitration demand. (*Id.* at 4.) The Award explained that AAA Commercial Rule 7 requires parties to "object to the jurisdiction of the arbitrator or to the arbitrability of a claim . . . no later than the filing of the answering statement," and "[t]he arbitrator may rule on such objection as a preliminary matter or as part of the final award." (*Id.* (quoting AAA Commercial Arbitration Rule 7).) Thus, rather than ignoring controlling Supreme Court precedent on the Arbitrator's jurisdiction, the Arbitrator held that MediraRx waived its jurisdictional objection[4] by failing to timely raise it.

MediraRx argues "that the Arbitrator was simply wrong that MediraRx raised no challenge to his jurisdiction" in MediraRx's answering statement. (MediraRx Mem. at 20.) True, MediraRx's answer denied Novus's allegation that the AAA had jurisdiction over the controversy "to the extent that it suggests that the New York City AAA can maintain jurisdiction over this controversy/claim to the exclusion of the [P]harmacy [C]ontracts." (ECF No. 10-6

[4] MediraRx's contention that its jurisdictional argument cannot be waived is meritless. *See ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."); *see also* AAA Commercial Arbitration Rule 7(c).

¶ 11.) However, that denial was preceded by MediraRx's *admitting* Novus's jurisdictional allegation, so long as the AAA also had "concurrent jurisdiction over the [P]harmacy [C]ontracts . . . , irrespective of different venue of choice of law provisions contained in the [P]harmacy [C]ontracts." (*Id.*) And none of MediraRx's nine affirmative defenses purported to object on jurisdictional or arbitrability grounds. (*See id.* at 20-25.) Instead, when MediraRx invoked the Pharmacy Contracts in its affirmative defenses, it was on substantive grounds: For example, one of MediraRx's affirmative defenses contended that the Pharmacy Contracts "[a]mended and [e]xtended the [i]nitial 5-[y]ear term of the 340B TPA Agreement and affects the validity of the [n]otice purportedly [p]rovided by Novus." (*Id.* at 23.)

Although MediraRx's argument that the Arbitrator incorrectly decided the issue of waiver is not plainly meritless, the Award should not be vacated on this ground. FAA § 10(a)(4) asks only whether the Arbitrator exceeded his authority in deciding a question, not whether his answer was correct. *See Stolt-Nielsen*, 559 U.S. at 671 ("It is not enough for petitioners to show that the panel committed an error—or even a serious error."). AAA Commercial Arbitration Rule 7 is unambiguous insofar as it establishes that the Arbitrator "shall have the power to rule on his or her own jurisdiction . . . without any need to refer such matters first to a court," and a party "must object to the jurisdiction of the arbitrator . . . no later than the filing of the answering statement." Because the Arbitrator had the authority to answer the question of arbitrability, the Court's independent view of whether waiver occurred is irrelevant; the Court's role is limited to ensuring that the Arbitrator did not "stray[] from interpretation . . . and effectively dispense[] his own brand of industrial justice." *Garvey*, 532 U.S. at 509 (quotation marks omitted).

Under that highly deferential standard, the Court concludes that vacatur is unwarranted. MediraRx's answer *conditionally* objected to the Arbitrator's jurisdiction on the ground that the

Arbitrator should contextualize the terms of the TPA Agreement with text of the Pharmacy Contracts. The Arbitrator could have reasonably concluded that such a waffling challenge, unaccompanied by any affirmative defense on jurisdiction or arbitrability grounds, was not the kind of "forceful objection" that courts have found "necessary to indicate an unwillingness to submit to arbitration." *Abondolo v. Jerry WWHS Co., Inc.*, 829 F. Supp. 2d 120, 128 (E.D.N.Y. 2011) (quoting *S & G Flooring, Inc. v. N.Y.C. Dist. Counsel of Carpenters Pension Fund*, No. 09-CV-2836, 2009 WL 4931045, at *5 (S.D.N.Y. Dec. 21, 2009)). The fact that the Arbitrator did not expressly invoke the requirement for a forceful objection, and even the Arbitrator's misstatement that "[n]othing was raised about the jurisdiction of the [A]rbitrator in Medira's Answer and Affirmative Defenses," do not require otherwise. (ECF No. 10-10 at 4.) *See D.H. Blair*, 462 F.3d at 110 (vacatur inappropriate where "a ground for the arbitrator's decision can be inferred from the facts of the case"); *see also Conntech*, 102 F.3d at 687 ("[T]he mere fact that an arbitrator erroneously decides the facts is not a ground for vacating the award."). Finally, under Rule 7, any subsequent briefing did not preserve the jurisdictional objection that MediraRx already waived. *See* AAA Commercial Arbitration Rule 7.

**D. Confirmation of the Award**

Because the Court rejects MediraRx's grounds for vacatur, the Court grants Novus's cross-petition to confirm the Award. *See* 9 U.S.C. § 9 ("[T]he court must grant [an order seeking confirmation] unless the award is vacated, modified, or corrected."); *see also Spliethoff Transp.*, 2023 WL 6066247, at *3 ("Courts in the Southern District have held that upon the denial of a motion for vacatur, the Court must confirm an arbitration award." (quotation marks omitted)); *Miller v. UBS Fin. Servs. Inc.*, No. 18-CV-8415, 2019 WL 1988527, at *7 (S.D.N.Y. May 6, 2019) ("Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." (quotation marks omitted)).

### E. Fees

Lastly, Novus seeks fees and costs. (ECF No. 26 at 31.) "Under its inherent equitable powers, the Court 'may award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Spliethoff Transp. B.V. v. Phyto-Charter Inc.*, No. 20-CV-3283, 2024 WL 1717959, at *1 (S.D.N.Y. Apr. 22, 2024) (quoting *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). In the arbitration vacatur context, an award of fees is appropriate "when a challenger refuses to abide by an arbitrator's decision without justification." *Id.* (quotation marks omitted).

Here, the Court declines to exercise its inherent authority to award fees and costs because the Court concludes that MediraRx did not undertake the instant litigation without justification. Although MediraRx's arguments for vacatur were ultimately unavailing, "the record does not support the conclusion that they were interposed in bad faith." *Goulds Pumps (IPG), LLC v. United Steel Workers Local Union No. 3298*, 583 F. Supp. 3d 427, 437 (W.D.N.Y. 2022).

## IV. Conclusion

For the foregoing reasons, MediraRx's petition and motion to vacate the Award are DENIED; Novus's cross-petition to confirm the Award is GRANTED; and Novus's motion for attorney's fees is DENIED.

The Award of Arbitrator Kevin Feerick dated January 8, 2026 is hereby CONFIRMED.

The Clerk of Court is directed to close the motion at ECF No. 6, enter final judgment confirming the Award, and close this case.

SO ORDERED.

Dated: August 27, 2026
New York, New York

J. PAUL OETKEN
United States District Judge